UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| PATRICIA HENDERSON | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:09-cv-00973-TWP-TAB |
| AIRTRAN AIRWAYS, INC., | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment (Dkt. 18). This personal injury case centers around an accident that occurred when Patricia Henderson ("Henderson" or "Plaintiff") fell out of a wheel chair that was provided and escorted by AirTran Airways, Inc. ("AirTran" or "Defendant"). Henderson alleges that the accident was caused by the negligence of the AirTran employee who operated the wheelchair. In its Motion for Summary Judgment, AirTran claims that Henderson's suit is barred by the terms of AirTran's Contract of Carriage, which AirTran purportedly communicated to Henderson. For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. 18).

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable

inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubts as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## II.  BACKGROUND

On June 9, 2006, Henderson purchased an online ticket from AirTran to fly to Las Vegas. Henderson Dep. at 33 & Ex. 2. After purchasing her ticket, Henderson received an e-mail confirmation from AirTran. Dkt. 38-3. The last paragraph of the three page e-mail contains the following language in noticeably smaller font than the preceding language:

> Condition of Contract: Air Transportation by AirTran Airways is subject to the terms of AirTran Airways' Condition of Contract including Contract of Carriage terms or international tariff rules. Such conditions include, without limitations, limits on liability for personal injury, death and baggage claims, provisions for reservations, refusal to transport, consequential damages, substitution of alternate air carrier or aircraft waiver/modification of terms, delays, and failure or inability to perform service . . . The AirTran Airways contract of Carriage may be inspected at AirTran Airways customer service counter. For more information, direct inquiries to: AirTran Airways, Inc. Customer Relations Department, Dept. OSF . 995 AirTran Boulevard, Orlando, FL 32827.

*Id.*

When she arrived at the airport on August 31, 2006, Henderson received an AirTran "ticket jacket," which contained her passage contract. Henderson Dep. at 34-36. The following language appears on the upper left corner of the passage contract's first page:

**GENERAL INFORMATION**

**NOTICE OF INCORPORATED TERMS OF CONTRACT OF CARRIAGE**

> Transportation on AirTran Airways is subject to the terms contained in its Contract of Carriage . . . The Contract of Carriage includes provisions on: 1) Limits on liability for personal injury or death. 2) Limits on liability for baggage, including fragile or perishable goods, and availability of excess valuation coverage. 3) Claims restrictions, including on period of time in which passengers must file a claim or bring an action against the air carrier. 4) Rights of the air carrier to change terms of the contract. 5) Rules on reconfirmation of reservations, check-in times, and refusal to carry. 6) Rights of the air carrier and limits on liability for delay or failure to perform service, including schedule changes, substitution of alternate air carriers or aircraft, and rerouting.

Rector Aff. Ex. B.

The Contract of Carriage provides the following time limitation on lawsuits against AirTran:

> B. Any legal action premised on or related to the incident must be commenced within one (1) year of the date of the incident. If notice is not provided as set forth above and legal action is not commenced within one (1) year of the date of the incident, then AirTran disclaims any and all liability arising from or relating to such incident.

Rector Aff. Ex. A.

Henderson underwent knee surgery prior to the date of her flight. Henderson Dep. at 45. Because she was still in considerable pain from her surgery, AirTran provided her with escorted wheelchair service at the airport. *Id.* at 38. When the time arrived to board her flight, an AirTran employee wheeled Henderson to her departure gate. *Id.* at 42. Suddenly, Henderson's

wheelchair began "going real, real fast." *Id.* The wheelchair eventually tipped over, ejecting Henderson into a wall. *Id.* at 42-43, 46-48. Henderson landed on her injured knee. *Id.*

Although injured, Henderson boarded her flight for Las Vegas. *Id.* at 4. After she returned home, Henderson e-mailed AirTran to make a claim. Henderson Dep. at 64-65 & Ex. 3. On October 17, 2006, AirTran's insurance carrier sent Henderson a letter requesting that Henderson submit certain information so that it could evaluate her claim. *Id.* at 66 & Ex. 4. Henderson did not respond to this request, but on March 19, 2007, Henderson sent an e-mail to AirTran, asking that someone contact her regarding her claim. *Id.* at 70 & Ex. 5. Elizabeth Rector ("Rector") responded on behalf of AirTran, requesting that Henderson forward her "documents" to Rector's attention. *Id.* & Ex. 6. Again, Henderson did not respond to AirTran's request. Rector Aff. ¶ 9. On May 7, 2007, an employee of Henderson's legal counsel sent a letter to AirTran requesting, among other things, a copy of the incident report. Henderson Dep. Ex. 7. On June 14, 2007, AirTran's insurance carrier responded to Henderson's attorney and again requested certain information for the purpose of evaluating Henderson's claim. *Id.* Ex. 8. Following this letter, neither Henderson nor her attorney communicated with AirTran or its insurance carrier until the lawsuit was filed in state court on August 28, 2008. Rector Aff. ¶ 13.

AirTran filed its answer to Henderson's complaint in state court on September 12, 2008. Dkt. 31-37. On July 7, 2009, AirTran moved to amend its answer to include a defense premised on the Contract of Carriage's one-year limitation for commencing legal action. Dkt. 31-38. The state court did not rule on AirTran's motion to amend. Accordingly, after the case had been removed to this Court, AirTran again moved to amend its answer to include the time limitation defense. Dkt. 35. On April 28, 2010, Henderson filed her amended complaint. Dkt. 54. AirTran

4

answered the amended complaint on May 6, 2010, including its time limitation defense. Dkt. 55. Henderson moved to strike AirTran's time limitation defense, claiming that AirTran waived its opportunity to assert this defense. Dkt. 56. On August 18, 2010, the Magistrate Judge granted AirTran's motion to amend its answer and denied Henderson's motion to strike the amended answer. Dkt. 62.

The Court adds additional facts as needed below.

### III. DISCUSSION

At the outset, Henderson argues that AirTran waived its time limitation defense. After the Court received the parties submissions on AirTran's Motion for Summary Judgment, the Magistrate Judge granted AirTran's motion to amend its answer and denied Henderson's motion to strike the amended answer. Dkt. 62. Accordingly, Henderson's argument is moot. See *Groninger v. Davison*, 364 F.2d 638, 640 (8th Cir. 1966) (citing *Emich Motors Corp. v. General Motors Corp.*, 229 F.2d 714, 716-18 (7th Cir. 1956)) ("[T]here is no waiver of the statute of limitations defense if the answer is properly amended to include it.").

**1.** *Reasonable Communication*

"A passenger is bound by the terms of the passage contract, so long as the terms are 'reasonably communicated.'" *Thompson v. Ulysses Cruises, Inc.*, 812 F. Supp. 900, 902 (S.D. Ind. 1993) (Tinder, J.) (quoting *Spataro v. Koster Cruise, Ltd.*, 894 F.2d 44 (2d Cir. 1990)). Courts weigh two factors to determine whether a carrier made a reasonable effort to warn its passenger of a time limitation clause. *Id.* at 903. First, the court considers the manner in which the notification at issue is presented. *Id.* The court considers the "presence, placement, conspicuousness, and clarity of any notification clause directing the passenger's attention to the

5

limitations clause." *Id.* Second, the court considers extrinsic factors surrounding the purchase and retention of the passage contract, including "the passenger's familiarity with the [passage contract], the time and incentive under the circumstances to study the provisions of the [passage contract], and any other notice that the passenger received outside the [passage contract]." *Id.* (quoting *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 865 (1st Cir. 1983)).

As to the first prong, the notice directing Henderson to the Contract of Carriage's limitations on AirTran's liability was located in the upper left corner of the passage contract's first page. *See id.* ("If the face of the contract ticket contains a conspicuous notice . . . the passenger generally is bound by the limitations clause even if she does not read the contract."). The notice was distinctly located underneath capitalized, bolded, and underlined text. *Cf. id.* ("The notice was conspicuous in that it was printed in highlighted or contrasting type in the lower right-hand corner."). Similar to the notice in *Thompson*, a passenger could not avoid observing the notice if he or she bothered to begin reading the passage contract. *See id.* ("Passengers cannot avoid observing the notice as they turn the pages of the ticket, which is bound on the left."). Accordingly, the Court concludes that AirTran satisfied the first prong of the "reasonable communicativeness" test. *Id.*

As to the second prong, Henderson does not claim to have read the passage contract. *See id.* ("[P]assengers have a contractual duty to inform themselves of their contract terms."). Henderson believes she disposed of the AirTran ticket jacket, which contained the passage contract, after she returned from Las Vegas. Henderson Dep. at 59; Henderson Aff. ¶ 8; *cf. Thompson*, 812 F.Supp. at 904 ("[T]he Thompsons had the ticket in their possession throughout the one-year limitations period following Jane's injury."). However, she had the AirTran ticket

6

jacket in Las Vegas, during which time she attempted to telephone an AirTran representative to discuss her injuries. Henderson Dep. at 11-14, 64-65. Shortly after her return, Henderson e-mailed AirTran to make a claim. *Id.* at 65 & Ex. 3. It was during this time period, while she was still in possession of the passage contract, that Henderson had a "strong incentive to determine the correct course of action in pursuing [her] claims against [AirTran]." *Thompson*, 812 F. Supp. at 904.

This is not a case where the carrier gave passengers only a few minutes before boarding during which to read their passage contracts. *Cf. Stevens v. Harrah's Ill. Corp.*, No. 96 C 8016, 1999 WL 639182, at *3 (N.D. Ill. Aug. 17, 1999) (denying carrier's motion for summary judgment where passenger received passage contract prior to boarding vessel, and, moments later, the carrier took and did not return the passage contract). Indeed, Henderson could have retained the AirTran ticket jacket and passage contract as long as she wished, but she decided to dispose of them. Henderson claims she is an inexperienced traveler and could not be expected to know that the information inside of her AirTran ticket jacket was relevant to her personal injury claim. However, prior to the flight at issue, Henderson flew approximately ten times. Henderson Dep. at 25, 41, 156-57. In addition, Henderson consulted legal counsel at least three months prior to the expiration of the one-year time limitation. Henderson Dep. Ex. 7. In the Court's opinion, Henderson's attorney (if not Henderson) should be expected to know that ticket jackets contain the fine print that govern the legal relationship between a carrier and its passengers.

Furthermore, the Court notes that unlike the attempted communication in *Thompson*, Henderson's receipt of the passage contract was preceded by the e-mail confirmation, which also

notified the recipient that Contract of Carriage terms limited AirTran's liability. *Cf.* 812 F. Supp. 900 (concluding that notice provision was reasonably communicated to passenger where passenger received a single notice). At the time of her deposition, Henderson purported to have saved AirTran's e-mail confirmation on her personal computer. Henderson Dep. at 59. By way of affidavit, Henderson now claims that she no longer has a saved copy of the e-mail.[1] Henderson Aff. ¶¶ 2, 3. Henderson's contradiction ultimately is inconsequential because she also testified that she gave her attorney a copy of the e-mail, and there is nothing before the Court indicating that Henderson did not have a saved copy of the e-mail (at least) before she hired legal counsel. Henderson Dep. at 53. Furthermore, Henderson has not suggested why her attorney could not have put her on notice of the limitations of liability that were alluded to in the e-mail. *Id.* In any event, either Henderson or her counsel (perhaps both) had possession of the e-mail when there was a "strong incentive" for Henderson to determine how to proceed against AirTran. *Thompson*, 812 F.Supp. at 904. For all these reasons, the Court concludes that AirTran satisfied the second prong of the "reasonable communicativeness" test.[2] *Id.*

## 2. Interpreting the Contract of Carriage

---

[1] Ordinarily, a plaintiff cannot create an issue of fact by contradicting her deposition testimony in a subsequent affidavit. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993).

[2] The Court notes that unlike the passenger contract in *Thompson*, AirTran's passage contract did not contain the one-year time limitation clause, but rather incorporated the terms of the Contract of Carriage. Federal regulations authorize such incorporation, 14 C.F.R. §§ 253.4(a), 253.5(b), and another district court in the Seventh Circuit has concluded that such incorporation does not change a court's analysis under the "reasonable communicativeness" test. *Harger v. Spirit Airlines, Inc.*, No. 01 C 8606, 2003 WL 21218968, at *5 (N.D. Ill. May 22, 2003). Accordingly, the Court's conclusion is unchanged by the fact that AirTran's passenger contract does not contain the one-year clause but rather incorporates the time limitation clause.

Henderson argues in the alternative that she complied with the Contract of Carriage's one-year time limitation clause. In support, Henderson contends that under the plain language of the Contract of Carriage, she "commenced" "legal action" by notifying AirTran that she intended to pursue a claim.

The interpretation of a contract is a matter of law for the courts. *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002). The goal of contract interpretation is to ascertain the intent of the parties. *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993). If the language of a contract is "clear and unambiguous," the Court will give that language "its plain and ordinary meaning." *Barclay v. State Auto Ins. Cos.*, 816 N.E.2d 973, 975 (Ind. Ct. App. 2004). "In the absence of ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties." *Jenkins v. King*, 65 N.E.2d 121, 123 (Ind. 1946). The Court's interpretation of the contract should "harmonize the contract's provisions rather than create a conflict." *Craig v. Pepperidge Farm, Inc.*, No. 1:06-cv-954, 2010 WL 3447560, at *5 (S.D. Ind. Aug. 27, 2010) (Barker, J.); *see also Trs. of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind. Ct. App. 2009) (same) . "It should give effect to all words, terms, and phrases rather than rendering some ineffective or meaningless." *Craig*, 2010 WL 3447560, at *5; *see also Evansville-Vanderburgh Sch. Corp. v. Moll*, 344 N.E.2d 831, 837 (Ind. 1976) (same).

In light of the foregoing standards, the Court notes that the paragraph preceding the clause at issue reads:

> A. No claim for loss, damage, delay in delivery of baggage, or personal injury or death of a passenger will be entertained by AirTran unless preliminary notice of the claim is presented to an office of the carrier within four (4) hours after occurrence of the event giving rise to the claim.

Rector Aff. Ex. A. Thus, the Contract of Carriage contemplates both preliminary notice of a

9

claim within four hours and the filing of a lawsuit within one year of any accident. If Henderson's proffered interpretation were adopted, the clause requiring preliminary notice would be meaningless. Accordingly, the Court concludes that the unambiguous language of the Contract of Carriage requires prospective plaintiffs to file suit within one year of any accident. Henderson does not dispute that she failed to file her complaint within this time limit. Therefore, no issue of fact exists as to whether Henderson breached the Contract of Carriage's one-year time limitation clause.

## IV. CONCLUSION

For the reasons noted herein, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. 18) in its entirety. A separate judgment shall issue in favor of Defendant.

SO ORDERED.

Date: 10/14/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

Matthew D. Bruno
KIGHTLINGER & GRAY
mbruno@k-glaw.com

Steven Edward Springer
KIGHTLINGER & GRAY
sspringer@k-glaw.com

Amy Van Ostrand-Fakehany
HENSLEY LEGAL GROUP, PC
avanostrand@hensleylegal.com